S02A1338. CITY OF ATLANTA v. BARNES et al.
S02A1478. CITY OF ATLANTA v. SALO.
(578 SE2d 110)

BENHAM, Justice.

The City of Atlanta (hereinafter "Atlanta") imposes an occupation tax, the coverage of which includes attorneys who maintain an office and practice law within Atlanta. In 1999, a group of such attorneys, the Barnes appellees, filed a demand for refund of the taxes they had paid for 1996, 1997, and 1998, asserting that the tax was an unconstitutional regulation of the practice of law. One year later, the refund demand not having been acted upon, they sued Atlanta, again alleging that the occupation tax was an unconstitutional precondition on the practice of law, and seeking a refund of taxes paid. The trial court certified two classes in the Barnes case: Class One consists of all attorneys who have paid the occupation tax but have not made pre-litigation claims for refunds pursuant to OCGA § 48-5-380, and was certified for the constitutional claim only; Class Two consists of all attorneys who have paid the tax and have made a claim for refund, and was certified for both the constitutional and refund claims. The trial court granted the Barnes appellees' motion for summary judgment on the constitutional claim, ruling the tax was an unconstitutional precondition on the practice of law. In a separate action, appellee Salo filed suit against Atlanta alleging the tax was unconstitutional and asking for declaratory judgment. Salo has not paid the tax. The trial court dismissed Salo's complaint, but later reversed itself after it granted summary judgment to the Barnes appellees. Salo was then granted the declaratory relief she sought. Atlanta appealed the rulings in both cases and the appeals have been consolidated for decision.

1. We consider first the constitutionality of Atlanta's occupation

tax ordinance. In *Sexton v. City of Jonesboro*, 267 Ga. 571 (481 SE2d 818) (1997), this Court considered an occupation tax similar to that involved in this case and held it to be an unconstitutional regulation of the practice of law, regulation of which is reserved by Georgia's constitution to this Court. The trial court in the present case considered Atlanta's occupation tax scheme in light of the holding in *Sexton* and found it unconstitutional as it applied to lawyers. Atlanta enumerates as error that finding.

This Court made clear in *Sexton* that municipalities may impose an occupation tax that includes lawyers within its scope so long as the tax is a revenue measure only and does not act effectively as a precondition or license for engaging in the practice of law. Id. In concluding that the Jonesboro tax ordinance did act as a precondition to practicing law, this Court enumerated a number of elements showing the true nature of the tax ordinance: registration and payment were required prior to transaction of business for that year; a certificate was required to be obtained and displayed; and nonpayment of the tax could result in criminal sanctions. At the time of the decision in *Sexton*, the occupation tax ordinance in place in Atlanta contained those same features, but Atlanta began amending the ordinance in 1998 in an attempt to avoid the problems infecting the Jonesboro occupation tax ordinance. Nevertheless, the trial court found the ordinance presently in place still requires payment of the tax in advance of practicing law and still creates the possibility of incarceration of lawyers who engage in the practice of law but refuse to pay the tax after being ordered by a court to do so. Based on those factors, we agree with the trial court that Atlanta's ordinance remains indistinguishable in effect from the ordinance struck down in *Sexton*: payment of the tax is a precondition to the practice of law, and incarceration for practicing law without payment of the tax would impede the practice of law whether that incarceration is directly for practicing while delinquent, as was the case in *Sexton*, or indirectly for that conduct by means of a citation for contempt of court. The trial court's holding that the ordinance is unconstitutional was correct.

2. Atlanta contends that the trial court erred in failing to sever from the ordinance the part it found unconstitutional. " 'Where one portion of a statute is unconstitutional, this court has the power to sever that portion of the statute and preserve the remainder if the remaining portion of the Act accomplishes the purpose the legislature intended. (Cits.)' [Cit.]" *Dawson v. State*, 274 Ga. 327, 335 (6) (554 SE2d 137) (2001). We note that the trial court did sever the unconstitutional portion of the ordinance from the remainder in that it struck down the ordinance only so far as it applies to lawyers. The difficulty with going further with the concept of severance is that what would have to be severed in order to make the ordinance consti-

tutional as it applies to lawyers, the requirement that the tax be paid as a precondition of practicing law in Atlanta, is the heart of the ordinance. "When an unconstitutional portion of a statute is so connected with the general scope of the statute that to sever it would result in a statute that fails to correspond to the main legislative purpose, or give effect to that purpose, the statute must fall in its entirety." *State of Ga. v. Jackson*, 269 Ga. 308, 312 (1) (496 SE2d 912) (1998). The requirement that the tax be paid prior to practicing law in Atlanta could not be severed without radically rewriting the ordinance, which is not a judicial function. *McCabe v. Lundell*, 199 Ga. App. 639 (2) (405 SE2d 693) (1991). The trial court did not err in failing to find the unconstitutional portion of the ordinance severable.

3. The suit in this case was brought pursuant to OCGA § 48-5-380 (c), which provides in pertinent part as follows:

> Any taxpayer whose claim for refund is denied by the governing authority of the county or municipality or whose claim is not denied or approved by the governing authority within one year from the date of filing the claim shall have the right to bring an action for a refund in the superior court of the county in which the claim arises.

Considering a similar provision in a tax refund statute pertaining to taxes collected by the State, this Court held in *Henderson v. Carter*, 229 Ga. 876, 879 (2) (195 SE2d 4) (1972), that

> "[the refund] statute provides the method by which refunds and suits for refunds may be made by taxpayers. It does not provide for the bringing of a class action in either instance. The State has waived her sovereign immunity only to the extent provided by the express terms of this statute. It follows that a class action in the instant case is not authorized."

Relying on that decision, Atlanta contends there can be no class actions in tax refund suits and enumerates as error the trial court's certification of the Class Two plaintiffs for the refund claim.

Assuming without deciding that the limitations on statutory waivers of immunity are the same for municipalities as they are for the State,[1] and that the holding in *Henderson* would, therefore, apply

---

[1] The constitutional provision permitting the waiver of the State's immunity, which was involved in *Henderson*, and the constitutional provision permitting the waiver of the immunity of municipalities differ in the degree of specificity required to enact a waiver. For the State, Art. I, Sec. II, Par. IX (e), Constitution of Georgia 1983, provides that the State's immunity "can only be waived by an Act of the General Assembly which specifically provides

here, we deem it necessary to reconsider the holding in that case. The decision in *Henderson* provides no analysis or authority for its broad holding that class actions are not allowed in tax refund cases. Reconsidering that holding, we conclude that its negative implication does not necessarily follow from the premise that sovereign immunity is waived only to the extent provided for by the express terms of the statute. When a statute provides the right to bring an action for a tax refund against a governmental body, that statute provides an express waiver of immunity and establishes the extent of the waiver (the amount of the refund), but does not purport to provide for the form of action to be utilized. By participating as a plaintiff in a class action that includes a claim for a tax refund, a taxpayer is unquestionably bringing an action for a refund, which is what the statute permits. We conclude, therefore, that the holding in *Henderson* that there can be no class actions brought for tax refunds was error and that *Henderson* must be overruled, as must cases applying its holding, such as *Blackmon v. Scoven*, 231 Ga. 307 (4) (201 SE2d 474) (1973), and *Blackmon v. Ga. Independent Oilmen's Assn.*, 129 Ga. App. 171 (1) (198 SE2d 896) (1973). We also disapprove the dicta to that effect in *State of Ga. v. Private Truck Council &c.*, 258 Ga. 531 (2) (371 SE2d 378) (1988). Since Atlanta's only argument on appeal regarding class certification of the refund portion of the suit was based on *Henderson*, and we have overruled *Henderson*, no basis for reversal of the trial court ruling on that issue appears.

4. Pointing out that a ruling requiring refund of the taxes collected from lawyers under the occupation tax ordinance would cost it millions of dollars, Atlanta asserts that the ruling of unconstitutionality should be applied prospectively only.

> The general rule is that an unconstitutional statute is wholly void and of no force and effect from the date it was enacted. This harsh rule is subject to exceptions, however, where, because of the nature of the statute and its previous application, unjust results would accrue to those who justifiably relied on it. [Cits.]

*Strickland v. Newton County*, 244 Ga. 54, 55 (1) (258 SE2d 132) (1979). In deciding whether to apply a holding retroactively or prospectively, this Court has previously employed the test enunciated in *Chevron Oil Co. v. Huson*, 404 U. S. 97 (92 SC 349, 30 LE2d 296) (1971).

---

that sovereign immunity is thereby waived and the extent of such waiver." By contrast, Art. IX, Sec. II, Par. IX provides succinctly as follows: "The General Assembly may waive the immunity of counties, municipalities, and school districts by law."

[I]n deciding a retroactivity question the court should:

(1) Consider whether the decision to be applied nonretroactively established a new principle of law, either by overruling past precedent on which litigants relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.

(2) Balance . . . the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation would further or retard its operation.

(3) Weigh the inequity imposed by retroactive application, for, if a decision could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the injustice or hardship by a holding of nonretroactivity.

*Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, 712 (3) (300 SE2d 673) (1983).

Applying the first of those standards, we cannot conclude that the trial court's ruling established a new principle of law or decided a matter of first impression: *Sexton v. City of Jonesboro*, supra, was decided in 1997. With regard to the second standard, we note that although the trial court acknowledged Atlanta's claim that no lawyer has been incarcerated for nonpayment of the tax, the ordinance has in fact operated as a means of regulating the practice of law. Applying the ruling of unconstitutionality retrospectively will have the effect of undoing that illegal regulation. Finally, considering the equities of the matter, we recognize the financial hardship a retrospective application will entail, but do not find that alone to justify prospective application. As the trial court cogently noted, Atlanta was clearly aware of the ruling in *Sexton* and could have chosen a tax scheme that did not act as a precondition to the practice of law (the trial court suggested that taxing for the previous year rather than the coming year would suffice), but did not. In addition, as the appellees point out, Atlanta has had the use of the money it collected under the occupation tax ordinance and the lawyers from whom it was collected have lost that use. Weighing those equities, we are not persuaded that justice requires prospective application.

5. Finally, Atlanta complains that the trial court erred in finding that the three-year statute of limitation in the tax refund statute, OCGA § 48-5-380, was tolled as to the Class One plaintiffs, those who had not made a demand for a refund at least one year prior to the filing of the suit. This complaint is based on a misreading of the trial court's certification order, possibly engendered by an ambiguity in that order. The trial court ruled that the requirement in the statute

that a demand be made at least a year prior to filing suit establishes a mandatory administrative remedy, and that since the Class One plaintiffs had not complied with the statute, they could not be certified as a class for the refund portion of the suit. In a subsequent portion of the order, the trial court held that OCGA § 48-5-380 (b) establishes a three-year statute of limitation for refund suits,[2] running from the date of demand, and ruled that since the demand was made in 1999, the refund claim could apply only to taxes paid in 1996 and thereafter. While that particular paragraph of the trial court's order did not specify that it applied only to Class Two plaintiffs, its content and context demand the conclusion that it applied to them only: it was based on the date of the refund demand by the Class Two plaintiffs, and the following paragraph expressly denied certification of the Class One plaintiffs as to the refund claim. Since the trial court's order did not hold that the period of limitation was tolled as to the Class One plaintiffs, the City's complaint regarding the application of the period of limitation is without merit.

*Judgments affirmed. Fletcher, C. J., Sears, P. J., Carley, Thompson and Hines, JJ., and Judge William A. Foster III concur. Hunstein, J., disqualified.*

DECIDED MARCH 10, 2003 —
RECONSIDERATION DENIED APRIL 11, 2003.

*Lemuel H. Ward, Michelle L. Thomas, Rosalind R. Newell,* for appellant.

*Decker & Hallman, Robert D. Feagin, Winburn, Lewis, Barrow & Stolz, Irwin W. Stolz, Jr.,* for appellees (case no. S02A1338).

*Sonja L. Salo,* pro se (case no. S02A1478).

---

[2] That OCGA § 48-5-380 establishes a three-year period of limitation for tax refund claims was recognized in *Nat. Health Network v. Fulton County,* 270 Ga. 724 (3) (514 SE2d 422) (1999).